**UNITED STATES of America,**
**Plaintiff,**

v.

**Jack L. CLARK et al., Defendants.**

**No. 72 Cr. 1356.**

United States District Court,
S. D. New York.

May 8, 1973.

See also, D.C., 359 F.Supp. 128.

**132**

Whitney North Seymour, Jr., U. S. Atty., Gary P. Naftalis, Asst. U. S. Atty., of counsel, New York City, for plaintiff.

Wilmer, Cutler & Pickering, Arthur F. Mathews, of counsel, Washington, D.C., Poletti, Freiden, Prashker, Feldman & Gartner, Paul R. Grand, of counsel, New York City, for defendants.

GRIESA, District Judge.

Defendant Clark moves to dismiss Count 62 of the indictment on the ground of lack of subject matter jurisdiction. Clark contends that Count 62 alleges an extraterritorial offense not covered by the statute relied upon—Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

Count 62 alleges that Clark and other defendants engaged in fraud "in the offer and sale of securities"—debentures of Four Seasons Overseas, N.V., a Netherlands Antilles corporation, with attached warrants for the purchase of the common stock of Four Seasons Nursing Centers, the parent corporation, of which Clark was chief executive officer. The indictment alleges that $15 million in such debentures and warrants were sold to European investors. The indictment alleges that the fraud was committed by the use of means and instruments of transportation and communication in interstate commerce and by the use of the mails.

The language of Section 17(a) is broad enough·to cover the offense as alleged in Count 62. Section ·17(a) provides that it shall be unlawful for any person in the offer or sale of any securities, by the use of instrumentalities of interstate commerce or the mails, directly or indirectly, (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of misrepresentations, or (3) to engage in any transaction, practice, or course of business which would operate as a fraud or deceit upon the purchaser. Section 2(7) of the 1933 Act defines "interstate commerce" to mean trade or commerce in securities or any transportation or communication relating thereto among the several states "or between any foreign country and any state." Thus, the statute, on its face, would appear to cover a fraudulent scheme generated in the United States resulting in the sale of securities in Europe.

The question arises as to whether Section 17(a) must, for some reason, be given an interpretation more limited than its literal wording, so as to exclude the type of offense charged in Count 62. On this question, I rely principally on two cases in this Circuit, Schoenbaum v. Firstbrook, 405 F.2d 200 (2d Cir. 1968), and Leasco Data Processing Equipment Corporation v. Maxwell, 468 F.2d 1326 (2d Cir. 1972). The issues directly presented in these cases dealt with jurisdiction under Section 10(b) of the Securities Exchange Act. However, it would seem that the problems regarding extraterritoriality under § 17(a) of the 1933 Act and § 10(b) of the 1934 Act are essentially similar. Also, there is some specific discussion regarding Section 17(a) in the *Leasco* case.

*Leasco* makes it clear that the language of Section 17(a) is broad enough to cover securities of foreign issuers.

> "What is here significant is that in a statute primarily designed to require registration of securities offered for sale by issuers and underwriters unless the securities or the transactions were exempted, § 17(a) applied to all fraudulent offers or sales of securities in commerce or by the use of the mails—whether the securities were registered, unregistered, or exempted, and, so far as the language goes, whether of domestic or foreign issuers." (468 F.2d at 1335)

*Leasco* was a civil damage action involving fraudulent acts committed in England and in the United States which induced the purchase by plaintiff's foreign subsidiary of stock in a British corporation. All of the transactions were executed in England. The Court first considered whether jurisdiction over the claim was precluded as a matter of foreign relations law, and concluded that such was not the case in view of the fact that significant fraudulent *conduct* was alleged to have occurred in the United States. 468 F.2d at 1334. The Court cited with approval Section 17 of Restatement (Second) of Foreign Relations Law of the United States (1965), which refers to a situation where X and Y are in state A and X makes a misrepresentation to Y, after which X and Y go to state B. Because of the prior misrepresentations, Y delivers money to X. The Restatement asserts that state A has jurisdiction to prescribe a criminal penalty for obtaining money by false pretenses.

The Court in *Leasco* then considered the question as to whether it should find that the statute was limited to narrower fields than would be permitted under foreign relations law. In this connection, the Court stated (p. 1336):

> "Since Congress thus meant § 10(b) to protect against fraud in the sale or purchase of securities whether or not these were traded on organized United States markets, we cannot perceive any reason why it should have wished to limit the protection to securities of American issuers."

The Court went on to question whether the statute would be applicable if the misconduct had occurred solely in the foreign country, even though it had an effect upon an American investor. The Court concluded that where there was *both* conduct in the United States and impact on an American investor, the statute would be held to be applicable. 468 F.2d at 1337.

*Schoenbaum* was a civil damage derivative action, brought on behalf of a Canadian corporation, which was allegedly defrauded into selling its treasury shares at an inadequate price. The transactions alleged to have violated the statute occurred in Canada. However, the stock of the Canadian corporation was traded upon both the American Stock Exchange and the Toronto Stock Exchange, and American investors held stock in the Canadian corporation. The derivative action plaintiff was an American. The Court held that there was subject matter jurisdiction over the claim, and stated (405 F.2d p. 206):

> "We believe that Congress intended the Exchange Act to have extraterri-

**134**

torial application in order to protect domestic investors who have purchased foreign securities on American exchanges and to protect the domestic securities market from the effects of improper foreign transactions in American securities."

The Court further stated (p. 208):

"We hold that the district court has subject matter jurisdiction over violations of the Securities Exchange Act although the transactions which are alleged to violate the Act take place outside the United States, at least when the transactions involve stock registered and listed on a national securities exchange, and are detrimental to the interests of American investors."

■ If we consider the cumulative effect of *Schoenbaum* and *Leasco*, it would appear that § 10(b) of the 1934 Act, and § 17(a) of the 1933 Act, cover at least charges of fraudulent conduct in the United States resulting in sales of securities abroad which have a substantial detrimental effect upon the interests of American investors.

■ The indictment in the present case clearly alleges fraudulent conduct in the United States resulting in sales of securities abroad. As to the detrimental effect on the interests of American investors, the indictment charges that the purpose of the foreign issue was to have the proceeds available to the parent corporation, Four Seasons, in the form of unsecured loans. According to the indictment the European offering was one part of a scheme to convey to the American investing public a false image about the soundness of the business and financial condition and prospects of Four Seasons, thus artificially inflating the market price of Four Seasons stock. Also, part of the securities sold in Europe were warrants for the purchase of the stock in Four Seasons. Apparently these warrants, like the debentures of Overseas, could not be traded in the

United States. However, the Four Seasons stock, which would be acquired upon exercise of the warrants on or after September 1, 1970, would be traded in the United States, and presumably would be listed on the American Stock Exchange.

Thus, I believe that Count 62 sufficiently alleges a fraud in violation of Section 17(a) having, or threatening to have, substantial detrimental effects on the interests of American investors.

Clark's motion to dismiss Count 62 is denied.